# EXHIBIT "A"

**SO ORDERED.**

**Dated: January 29, 2008**

CHARLES G. CASE II
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| PORTELLA MANUFACTURING L.L.C., | Case No. 2:07-bk-03055-CGC |
| Debtor. | **ORDER APPROVING SALE OF PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363 AND GRANTING RELATED RELIEF** |

(Relates to Docket Nos. 66 and 67)

Hearing Date: January 9, 2008
Hearing Time: 2:30 p.m.

THIS MATTER COMES BEFORE THE COURT pursuant to the *Motion to Authorize Debtor to Sell Certain Assets Free and Clear of Liens, Claims and Interests* (the "Sale Motion") filed on December 20, 2007 [Docket No. 66] by PORTELLA MANUFACTURING L.L.C. ("Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case (the "Bankruptcy Case"). Pursuant to the Sale Motion, the Debtor asks the Court to approve the sale of substantially all tangible assets of the Debtor

4X 328,069,026v3 1/15/2008

(as more fully set forth on Exhibit A attached hereto, the "Assets"), free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363, to Great American Group ("Buyer") for $805,000 pursuant to the terms of the December 7, 2007 Auction Proposal Letter attached hereto as Exhibit B, subject to higher and better bids. The Assets are located within the Debtor's manufacturing facility at 21430 N. 15th Lane, Suite 120, Phoenix, Arizona 85027 (the "Facility"). On December 20, 2007, the Debtor filed the *Notice of Filing Notice of Motion for Order Authorizing Debtor to Sell Certain Assets Free and Clear of Liens, Claims, and Interests* (Docket No. 67) (the "Sale Notice") and the *Notice of Hearing on Debtor's Motion for Order Authorizing Debtor to Sell Certain Assets Free and Clear of Liens, Claims and Interests* (Docket No. 68) (the "Hearing Notice").

On December 20, 2007, the Sale Motion, Sale Notice, and Hearing Notice were served upon (i) the Office of the United States Trustee; (ii) all parties known or believed by the Debtor to assert liens, claims, rights, interests, or encumbrances in the Assets, including, but not limited to, Stearns Bank Arizona, NA ("Bank") and COP-Deer Valley, LLC ("Landlord"); (iii) all applicable taxing authorities; (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (v) all creditors on the Debtor's Master Mailing List. A *Limited Objection to Motion for Order Authorizing Debtor to Sell Certain Assets Free and Clear of Liens, Claims and Interests* was filed by Premiere Hardwoods (Docket No. 70) on December 27, 2007. No other objections to the Sale Motion were filed.

The Court held a duly noticed hearing on the Sale Motion on January 9, 2008 (the "Sale Hearing"), at which time the Court solicited higher and better bids for the Assets. The respective counsel for the Debtor, Buyer, Bank, Landlord, and Premiere Hardwoods (collectively, the "Parties") all appeared and were heard with respect to the Sale Motion.

Based on all of the foregoing, including the record of the Sale Hearing, and all germane matters of record in the Bankruptcy Case, with respect to the Sale Motion,

THE COURT FINDS AND CONCLUDES as follows:

A.  All parties in interest (including, without limitation, all entities asserting any liens, claims, rights, encumbrances or interests in the Assets) received due and sufficient notice of the Sale Hearing and the Sale Motion, and all of the relief requested therein, within the meaning of 11 U.S.C. §102. Without limiting the foregoing, a full, fair and reasonable opportunity was afforded to any person or entity to make a higher or otherwise better offer to purchase the Assets than the offer submitted by Buyer.

B.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.  The statutory basis for the relief requested is 11 U.S.C. §§ 363 and 365.

D.  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

E.  This matter is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2).

F.  During the Sale Hearing, the highest and best offer for the Assets, as accepted by the Debtor and approved by the Court, was submitted by Buyer in the amount of $805,000 (the "Purchase Price"). No other person or entity appeared or bid on the Assets. The Purchase Price represents the highest and best price for the Assets.

G.  Bank has consented to the sale of the Assets to Buyer, on the terms and conditions stated in the Auction Proposal Letter and this Order provided that Bank's first priority lien on and security interests in the Assets attach to the net sale proceeds.

H.  The sale of the Assets on the terms and conditions stated in the Auction Proposal Letter, on the record during the Sale Hearing, and as set forth in this Order, is in the best interests of the Debtor and the Debtor's Chapter 11 estate, and represents the sound exercise of the Debtor's business judgment. The Debtor has demonstrated

compelling circumstances to sell the Assets outside of a plan of reorganization pursuant to 11 U.S.C. §§ 363(b) and (f).

I.     One or more of the requirements of 11 U.S.C. §363(f) have been met, such that the Assets may be sold by the Debtor free and clear of any and all liens, claims (as defined in 11 U.S.C. §101(5)), security interests, encumbrances, and interests of every kind and nature.

J.     The negotiation and sale of the Assets were conducted at arm's length and in good faith; and, the Buyer shall be deemed a good faith purchaser entitled to all of the protections afforded under 11 U.S.C. §363(m). There have been no assertions that would implicate the provisions of 11 U.S.C. §363(n).

K.     The Buyer is not a mere continuation of the Debtor, there is not a substantial continuity between the Buyer and the Debtor, and there is no continuity of enterprise between the Buyer and the Debtor. No common identity of officers, directors, or stockholders exists between the Buyer and the Debtor. The Buyer does not constitute a successor to the Debtor or its estate and the sale of the Assets to the Buyer does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtor.

L.     The Buyer is not purchasing all of the Debtor's assets but only those Assets identified in, and subject to the terms of, the Auction Proposal Letter and this Order. The Buyer is not assuming any liabilities or obligations of the Debtor.

M.     The Debtor has full corporate power and authority to sell the Assets and to execute and deliver all documents necessary or required by the Buyer to effectuate the sale of the Assets to Buyer, and no other consents or approvals are required for the Debtor to consummate the transactions contemplated by the Auction Proposal Letter and this Order. Based on all of the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.    The Sale Motion is granted as provided herein.  All objections to the Sale Motion or the relief requested therein have been withdrawn, waived or settled as announced to the Court at the Sale Hearing and as contained in this Order.

2.    The sale of the Assets to Buyer on the terms and conditions stated in the Auction Proposal Letter, on the record during the Sale Hearing, and in this Order, is hereby approved.

3.    Without limiting the foregoing, the Debtor shall be and hereby is authorized and directed to sell the Assets to Buyer free and clear of all liens, claims (as defined in 11 U.S.C. §101(5)), encumbrances, and interests of every kind and nature pursuant to 11 U.S.C. §§ 363(b) and (f) in accordance with the terms of this Order, with all such liens, claims, encumbrances, and interests to attach to the proceeds from the sale of the Assets to the same extent, validity, and priority, as such liens, claims, encumbrances, and interests attached to the Assets.

4.    As of the Petition Date, the Debtor was a Tenant under a Lease with the Landlord's predecessor dated January 10, 2006 (the "Lease"), relating to the Debtor's use and occupancy of the Facility.  Under the Lease, the Debtor currently is required to make monthly payments of rent and other charges in the aggregate amount of $27,322.82.  Pursuant to 11 U.S.C. § 365(d)(4), the Debtor's current deadline to assume or reject the Lease is January 29, 2008 (the "Rejection Date").  Based on the Landlord's consent, the Rejection Date is extended as follows: (a) to February 1, 2008, provided that the Landlord receives the sum of $21,858.26 within two (2) business days following the entry of this Order, and (b) to February 29, 2008, provided that the Landlord receives an additional $21,858.26 on or before February 1, 2008.  The Lease will be deemed rejected as of March 1, 2008. Pursuant to the Landlord's consent, any "use" clause or restriction in the

1   Lease is deemed amended by this Order to allow the Buyer to conduct a liquidation sale of
2   the Assets at the Facility, which shall be conducted on or before February 22, 2008.
3   Buyer will conduct the liquidation sale in a manner that does not interfere with the normal
4   use and occupancy, by Landlord's other tenants, of premises adjacent to or in the vicinity
5   of the Facility.  Buyer shall be authorized to use the name "Portella Manufacturing" when
6   advertising and conducting the liquidation sale.

7        5.    From and after the date of this Order, Debtor shall provide Buyer with
8   unlimited access to the Facility through February 29, 2008 for the purposes of conducting
9   a liquidation sale of the Assets, including preparing for same and allowing the inspection
10  of the Assets by prospective bidders, and removing the Assets from the Facility.  The
11  Debtor and the Buyer shall provide the Landlord and its agents reasonable access to the
12  Facility during regular business hours, prior to March 1, 2008, in order to allow the
13  Landlord to attempt to re-let the Facility immediately following the rejection of the Lease.
14  Buyer has agreed to pay: (a) $43,716.52 of the Purchase Price (the "Rent Payment") to the
15  Landlord, for the benefit of the Debtor, as follows: $21,858.26 within two (2) business
16  days following the entry of this Order, and $21,858.26 on or before February 1, 2008, in
17  order to satisfy the Debtor's rental obligations to the Landlord under the terms of this
18  Order; and (b) an additional $ $16,134.86 of the Purchase Price to APS, for the benefit of
19  the Debtor, for unpaid electrical service and a portion of the deposit required by a
20  previous Order of the Court (the "APS Payment").

21       6.    Prior to entry of this Order, Buyer asserted that the power screw conveyor to
22  the dust collector outside the Facility was stolen.  Based on this representation, the parties
23  have agreed that the Purchase Price will be reduced by $6,000.00 (the "Purchase Price
24  Reduction").

25

26

7.     Within seven (7) business days after the date that this Order is entered, the Buyer shall: (a) pay the remainder of the Purchase Price ($805,000 less the Rent Payment, the APS Payment and the Purchase Price Reduction) to Debtor, less a $50,000 hold-back (the "Hold-Back Funds"), in certified funds payable to Mann, Berens & Wisner, LLP ("MBW") to be deposited into MBW's trust account, and (b) deliver the Hold-Back Funds to Greenberg Traurig, LLP ("GT") to be deposited into GT's trust account and disbursed only in accordance with the terms of this Order. Upon receipt of the remainder of the Purchase Price and the deposit of the Hold-Back Funds in GT's trust account, the Debtor is authorized and directed to deliver the Assets to Buyer and to execute such documents as may reasonably be required to evidence and effectuate the conveyance of the Assets to Buyer.

8.     Debtor shall take appropriate steps to ensure, at Debtor's sole cost and expense, that electric and water utility services continue to be provided uninterrupted at the Facility through February 29, 2008. If electric or water utility services to the Facility are shut-off by the respective utility provider(s) on or before February 29, 2008 due to non-payment by the Debtor, or for any other reason, Buyer shall be entitled to use the portion of the Hold-Back Funds necessary to restore electric and water utility services to the Facility through February 29, 2008. Any Hold-Back Funds advanced by Buyer to pay for electric or water utilities for the Facility shall reduce the Purchase Price on a dollar for dollar basis.

9.     Debtor shall take appropriate steps to ensure that internet and telephone utility services continue to be provided uninterrupted at the Facility through February 29, 2008. However, Buyer shall pay the cost of the internet and telephone utility services for the Facility attributable to the period of time from January 9, 2008 through February 29, 2008. If internet or telephone utility services to the Facility are shut-off by the respective

utility provider(s) on or before February 29, 2008 due to non-payment by the Debtor of amounts due for services prior to January 9, 2008, or for any other reason, Buyer shall be entitled to use the portion of the Hold-Back Funds necessary to pay any past due amounts and restore internet and telephone utility services to the Facility through February 29, 2008. Any Hold-Back Funds advanced by Buyer to Debtor to pay past due amounts for internet or telephone utility services for the Facility, for utility services provided prior to January 9, 2008, shall reduce the Purchase Price on a dollar for dollar basis.

10. The fire sprinkler system ("FSS") at the Facility is connected to two spray booths and the chemical storage room. Buyer will work with the Landlord and RCI (or another properly licensed entity approved by the Landlord) to disconnect these items from and secure the FSS and properly monitor the FSS during this disconnection. Buyer shall be responsible for and shall pay the cost associated with this work without reduction to the Purchase Price.

11. Buyer shall remove all Assets from the Facility on or before February 29, 2008. Buyer shall not be responsible for removing any paint, lacquer, chemicals or any other hazardous materials from the Facility. Buyer also shall not be responsible for removing any "homemade" wooden work benches from the Facility, although Buyer is authorized by the Debtor to dispose of such property if Buyer elects.

12. Buyer shall cause any damage to the Facility that occurs as a result of Buyer's removal of the Assets from the Facility to be repaired on or before February 29, 2008 and indemnify Landlord for the actual cost of repairing any such damage, to the extent that such damage is not timely repaired by the Buyer. Buyer shall not be responsible to Landlord or any other person or entity for: (a) removing any bolts that are imbedded in the floor of the Facility; (b) removing any electrical conduit from the Facility (although the Buyer shall tape and cap any exposed wires); or (c) repairing any holes or

openings left in the structure of the Facility solely as a result of Buyer's removal of the Assets (for example the openings left after the removal of the paint booths and dust collector).

13.     Within two (2) business days following the entry of this Order, the Debtor shall deposit the sum of $10,000 in MBW's trust account, as and for a cash bond ("Cash Deposit"). Evidence of the Cash Deposit shall be immediately provided to the Landlord's counsel by the Debtor's counsel. The Cash Deposit shall be used to secure Debtor's obligations to: (a) remove all equipment and personal property from the Facility by no later than February 29, 2008, (b) leave the Facility in a broom-clean condition, and (c) cause no damage to the Facility as a result of the removal of equipment and personal property at or from the Facility. The Cash Deposit shall remain in MBW's Trust Account and shall not be used or disbursed absent either a stipulation by the Landlord and the Debtor or further Order of this Court; provided, however, the Cash Deposit shall be used and applied as provided in this Order prior to the application or use of any other deposit that may have been provided under the Lease. The Debtor shall surrender possession of the Facility to the Landlord on or before March 1, 2008. For purposes of the Cash Deposit provided for herein, the Debtor shall leave the Facility, as of March 1, 2008, in a broom-cleaned condition, with all equipment and personal property, including any signage, being removed from the Facility by said date and without damage to the Facility that is or was caused by the removal of equipment and personal property at or from the Facility.

14.     Within two (2) business days following the entry of this Order, the Debtor shall deposit the sum of $10,000 in MBW's trust account, as and for a cash bond ("Additional Deposit"). Evidence of the Additional Deposit shall be immediately provided to the Landlord's counsel by the Debtor's counsel. The Additional Deposit shall be used to secure the timely removal of all equipment and personal property from the

Facility by no later than February 29, 2008, and the Debtor leaving the Facility in a broom

clean condition with no damage to the Facility due to the use or removal of equipment and

personal property at or from the Facility. The Additional Deposit shall remain in MBW's

Trust Account and shall not be used for any purpose absent either a stipulation by the

Landlord and the Debtor or a further Order of the Court. The Additional Deposit shall be

used and applied as provided in this Order prior to the application or use of any other

deposit that may have been provided under the Lease. The Debtor shall surrender

possession of the Facility to the Landlord on or before March 1, 2008, in a broom-cleaned

condition, with all equipment and personal property, including any signage, being

removed from the Facility by said date and without damage to the Facility.

15.     Debtor shall immediately cause the Code for the Facility Security System

and the locks on all doors to the Facility to be changed to prevent any theft of the Assets.

The Debtor and Buyer shall split equally the cost of changing the locks on the Facility.

On or before March 1, 2008, the Debtor shall provide the Landlord with all keys and

codes to the Facility.

16.     On or before March 10, 2008, Buyer shall provide Debtor and Debtor's

counsel with a final accounting of any uses of the Hold-Back Funds authorized by the

terms of this Order and cause the remainder of the Hold-Back Funds, if any, to be

deposited into MBW's Trust Account for the benefit of the Debtor.

17.     This Order is and shall be binding upon the Parties and all persons and

entities, and govern the acts of all persons and entities with respect to the sale of the

Assets, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and

all other persons and entities who may be required by operation of law, the duties of their

office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets; and, each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order.

18. The Buyer is a good faith purchaser of the Assets and is entitled to all protections afforded a good faith purchaser pursuant to Bankr. Code Section 363(m).

19. This Order is final, appealable and shall be effective and enforceable immediately upon entry notwithstanding Rules 6004(h), 6006(d), 7062, and 9014 of the Federal Rules of Bankruptcy Procedure; and, the Debtor is hereby authorized to close the sale to Buyer immediately upon entry of this Order.

20. This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), any holders (whether known or unknown) of liens, claims, encumbrances or interests of any kind or nature in and to the Assets, all respective successors and assigns of the Buyer and the Debtor and their respective affiliates and subsidiaries, including, in the case of the Debtor, any trustee subsequently appointed in the Debtor's chapter 11 case or in any subsequent chapter 7 case for the Debtor. This Order shall survive any dismissal of the Debtor's chapter 11 case or any conversion of this chapter 11 case to a chapter 7 case for the Debtor. This Order, and all other documents and instruments to be executed and delivered by the Debtor in connection therewith, shall inure to the benefit of the Debtor, its estate, its creditors, and the Buyer and each of their respective successors and assigns.

21. Debtor's counsel is authorized to and shall pay Premiere Hardwoods, LLC $3,500.00 from the sales proceeds, within ten (10) days of the Debtor's receipt thereof. The check can be made payable directly to Premiere Hardwoods, LLC and delivered to

Janessa E. Koenig, Esq. at Jaburg & Wilk, P.C. The balance of Premiere Hardwoods' claim in the principal amount of $3,446.38 shall be an allowed administrative claim.

22. After the payment of all costs and expenses of sale, but no later than March 31, 2008, the Debtor shall pay the remainder of the sale proceeds to the Bank.

23. The Court shall retain exclusive jurisdiction to enforce the terms of this Order and any disputes among the Parties regarding the sale of the Assets and related matters.

**SIGNED AND DATED ABOVE**
**HON. CHARLES G. CASE II**
**U.S. BANKRUPTCY JUDGE**

**APPROVED BY:**

Mann, Berens & Wisner, LLP                    MARISCAL, WEEKS, McINTYRE
                                              & FRIEDLANDER, P.A.

By_____                   By_____
    Robert Berens                                 William Novotny

Attorneys for Portella Manufacturing, LLC     Attorneys for COP-Deer Valley, LLC

Greenberg Traurig, LLP                        Polt & Ball, P.L.C.

By_____                   By_____
    Todd A. Burgess                               James B. Ball

Attorneys for Great American Group            Attorneys for Stearns Bank Arizona, NA

Jaburg & Wilk, P.C.

By_____
    Janessa E. Koenig

Attorneys for Premiere Hardwoods, LLC

**APPROVED BY:**

Mann, Berens & Wisner, LLP

By _____
     Robert Berens

Attorneys for Portella Manufacturing, LLC

Greenberg Traurig, LLP

By _____
     Todd A. Burgess

Attorneys for Great American Group

Jaburg & Wilk, P.C.

By _____
     Janessa E. Koenig

Attorneys for Premiere Hardwoods, LLC

MARISCAL, WEEKS, McINTYRE
& FRIEDLANDER, P.A.

By _____
     William Novotny

Attorneys for COP-Deer Valley, LLC

Poli & Ball, P.L.C.

By _____ w/ permission
     James B. Ball

Attorneys for Stearns Bank Arizona, NA

*PHX 328,069,026v3 1/15/2008*

- 12 -

**APPROVED BY:**

Mann, Berens & Wisner, LLP

By_____
      Robert Berens

Attorneys for Portella Manufacturing, LLC

Greenberg Traurig, LLP

By _Todd A. Burgess_
      Todd A. Burgess

Attorneys for Great American Group

Jaburg & Wilk, P.C.

By_____
      Janessa E. Koenig

Attorneys for Premiere Hardwoods, LLC

MARISCAL, WEEKS, McINTYRE
& FRIEDLANDER, P.A.

By_____
      William Novotny

Attorneys for COP-Deer Valley, LLC

Poli & Ball, P.L.C.

By_____
      James D. Ball

Attorneys for Stearns Bank Arizona, NA

GRANTED

EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



HX 328,069,026v3 1/15/2008

# Exhibit "A"

**Subject to the limitations stated in the Sale Order, the "Assets" include, but are not limited to, the following:**

| | |
|---|---|
| 1 | 2006 SCMI Super Set Class Moulder, HSK Spindles, S/N AB/177855 |
| 1 | 2005 SCMI Model M3 Rip Saw, S/N AB/168992 |
| 1 | 2006 Striebig Model 5207 Panel Saw, Vertical Compact S/N 37001 |
| 1 | 2006 OMGA, Model RN700PM "US" Radial Arm Saw, S/N 01-303693 |
| 4 | Milwaukee Cut-Off Saws |
| 1 | 2004 Northtech Model NT10173XLT Shaper, S/N 040253 |
| 1 | 2006 Black Bros. Model 775SPR Top & Bottom Glue Spreader Narrow Machine, S/N 333259 |
| 1 | 2006 Black Bros. Model APPMRL 4X11 80 Psi Pod Press Motorized, S/N 333258 |
| 1 | 2006 Black Bros. Model APPRL 4X10 80 PSI Pod Press S/N 333257 |
| 1 | 2006 Winter Model DSG150 Eco Kerfsaw System, S/N 205T12 |
| 1 | Shop Fox Portable Dust Collector |
| 1 | 2005 Northtech, Model NT-610XL Planer |
| 1 | 2003 Doucet Model DE 10.532 Clamp Carrier, 32 Sections S/N 2006-03-280 |
| 1 | 2005 Ingersoll Rand A/C, 40 hp. |

*PHX 328,074,846v3 1/22/2008*

1    2006 Protech Model PT-7 Radias Arch System w/Clamps

1    2003 Doucet Model GS 13-8-8 Glue Coater, 13", S/N 7006-03-283

1    Whirlwind Model 212 Saw

1    2006 Northtech Model NTEV-920PC Sander, 36" Belt/Planer
     S/N 060212

1    Dewalt Saw

1    2006 SCMI Model SI300S Sliding Table Saw

1    2005 SCMI Model T-130NPS Shaper w/Feed Stock,
     S/N AB-172054

1    2004 Northtech Model NT-735-10 Shaper, S/N 040332

1    2005 Northtech Model NT-J1696 HC-73 Jointer
     S/N J1680078-05

1    2005 Powermatic Saw

1    2006 Northtech Model HB600A V-Band Saw, S/N 10995

1    2006 Crouch Ritter Model CR258 Sander

1    2006 Powermatic Model 720HD Hollow Chisel Mortiser

1    2006 Ritter Model R8043 Borer-Horizontal, S/N 2156

1    2006 DMC Model UNISAND Sander, 53" Belt, S/N SA/005 437

2    2006 Omga Futura Model ECO3520 Door Clamps-Hydraulic

*PHX 328,074,846v3 1/22/2008*

1    2006 Ritter Model CR376E Edge Sander/Shaper, S/N 139

1    Doucet Power Return Conveyor

1    2006 Morbidelli Model AuthorX544EVO CNC Router
     5-Axis, Tool Changer, S/N AL/008143

1    2006 KVAL Model 920-C Strike Jaw Routing Machine
     S/N 06-64154

1    2006 KVAL Model Commandor, Pre-Hang Machine
     w/MDA 3-Door Pre-Hang Machine, S/N 06-64154

1    2005 Powermatic Table Saw

1    2006 Omga Model TR2BN "NC" MM 3500US Double Miter Saw,
     Extra Length, CNC, S/N 01-303898

1    2005 Powermatic Table Saw

1    2005 Northtech Model HV-121 Jointer, S/N J1270039805

1    2004 Northtech Model NT-101-J3-XLT Shaper w/Maggi Stock
     Feeder, S/N 040255

1    Doucet Single Side Clamp Rack

3    Donray Model 85120 Dust Booths, S/N's 471622, 471620, 471621

1    Ingersoll Rand A/C, 40 HP

2    Spray Booths

1    Chemical Storage/Mixing room



*PHX 328,074,846v3 1/22/2008*

1    2006 Ford F450 XL Super Duty Utility Truck, 46,488 Miles

1    2005 Nissan Forklift, 5,000lb, LPG, 3-Stage

1    Foley Model 75-12 Profile Grinder

1    2005 Whirlwind Model 212 Saw

1    Murphy Rogers Dust Collection System

1    2006 Mikon Model M645 Multi-Moulder



Pallet Racking, Conveyors, Carts, Fans, Cabinets, Palm Sanders, Portable
Lights, Racks, Power Tools, Tools, Office Furniture, (13)
Notebook and Desk Top Computers, Monitor's, Computer Server
Equipment and Rack, Flat Screen TV, Lunch Room Furniture, Frig,
Microwaves, Printers, All Work In Process In Factory, Finished Inventory
In Factory, Wood Inventory, Parts, Hardware, Example Hardware,
Generator, Tooling, Printers, Desks, Leather Chairs, Phone System, Video
System, Showroom Inventory & Furniture, Tables, Pallet Jacks, Dust
Collector, and all related items located on the premises.

*PHX 328,074,846v3 1/22/2008*



**EXHIBIT B**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*HX 328,069,026v3 1/15/2008*



GREAT AMERICAN GROUP

<u>Via Electronic Mail</u>

December 7, 2007

Mr. Michael Medina
Vice President
Portella Custom Entries and Doors
21430 North 15th Lane
Suite 126
Phoenix, AZ 85027

**RE: Auction Proposal**

Dear Mr. Medina,

Thank you for the courtesy extended to me on Wednesday during my inspection of Portella Custom Entries and Doors (Portella) located at 21430 North 15th Lane, Suite 126, Phoenix, AZ. Please accept this correspondence as Great American Group's ("GAG") formal proposal. We greatly appreciate this bid opportunity and sincerely hope we will be able to provide auction and liquidation services on the Company's behalf.

For your convenience, this proposal has been broken down into five parts: Compensation, Guarantee Offer, Cash Offer, Project Objective, and Conclusion.

**<u>Compensation</u>**

**Commission Structure with Expense Reimbursement**
GAG would conduct the sale on behalf of Portella. The fee structure would be as follows: GAG will charge an industry-standard 10% Buyer's Premium that is charged to all auction purchasers (online bidders will be charged 15%). Under this structure we request reimbursement for direct sale related expenses. The expenses would be capped in our contract, advanced by our firm, passed on by invoice and then ultimately subtracted from the proceeds of the sale. We estimate the expenses to be $43,500 which includes all advertising, postage, email blasts, travel, lotting, internet bandwidth, personnel, accounting, cashiers, set up, and check out of all items.

### Guarantee Offer

GAG will guarantee $725,000 for all machinery, equipment, forklift, Ford F-450 XL truck, tooling, racking, material, offices, computers and related items located throughout the premises. The next $43,500 in proceeds will be retained by GAG for expenses. All proceeds over and above $768,000 will be split on a 90/10% basis, with the greater share retained by Portella. GAG will charge an industry-standard 10% Buyer's Premium that is charged to all auction purchasers. The guarantee amount will be funded to Portella (21) days prior to the auction sale.

### Cash Offer

GAG will offer in cash, $805,000 for all machinery, equipment, forklift, Ford F-450 XL truck, tooling, racking, material, offices, computers, and related items located throughout the premises.

### Project Objective

### Pre-Auction (Step 1)

GAG will market and advertise diligently to over 35,000 wood working companies in Arizona, California, Nevada, New Mexico, Colorado, Texas, Oklahoma, Kansas, and Utah with a 6 page full color brochure. In addition, as well as various US wood working facilities, alternative industrial entities and equipment dealers to find purchasers that will ultimately reutilize the machinery, equipment, rolling stock, warehouse items of Portella. Our email database contains over 200,000 current and past purchasers from our auctions and liquidations around North America. In addition, we utilize our state-of-the-art SIC mailing lists, designed to reach target machinery and equipment purchasers in the woodworking industry nationally and Canada. GAG will also advertise in the Classified Exchange and various news papers in the Phoenix area.

### Auction (Step 2)

It would be our proposal to liquidate the machinery and equipment of Portella through a one day auction sale. We would offer both live, on-site bidding, as well as simultaneous participation over the internet via Webcast to increase worldwide bidding. Webcasting the sale using our proprietary software expands the buying audience, increases bidding, and thus raises bottom-line results. We would dedicate one of our seasoned Auction Supervisors along with GAG's professional support staff to coordinate all cataloging and lotting of assets for sale. Auction set-up would commence three weeks prior to the auction date. The team would also be responsible for the supervision of collateral removal and have all equipment removed approximately 10 days after the auction sale.

CORPORATE HEADQUARTERS
6330 Variel Avenue
Woodland Hills, CA 91367
(818) 884-3737 • Fax (818) 884-3561

LOS ANGELES • CHICAGO • BOSTON • NEW YORK • ATLANTA

**Post-Auction (Step 3)**

After the auction concludes, we will prepare all proper reconciliation documentation. Reporting includes detailed auction results and full back-up of expenses. You will receive a complete settlement package for your records. GAG's trained support staff will also be available to answer any questions you may have regarding the reports. Final settlement and reporting will be delivered no later than 21 days after the auction sale.

**Conclusion**

We are confident about our strategy and ability to create a custom auction event for Portella. Furthermore, with our years of experience and team of seasoned professionals, we will conduct this auction sale in a manner that will meet or exceed your expectations.

We estimate that the sale will bring between $860,000 and $975,000. The equipment is very desirable and will attract many buyers who will pay top dollar for such modern machinery.

Please feel free to contact me directly if you have any questions or would like to discuss our proposal in greater detail. We are extremely excited about this opportunity and look forward to hearing from you at your earliest possible convenience.

Thank you again for your time and consideration.

Regards,

Roy Gamityan
Senior Vice President
Wholesale & Industrial Services

CORPORATE HEADQUARTERS
6330 Variel Avenue
Woodland Hills, CA 91367
(818) 884-3737 • Fax (818) 884-3561

LOS ANGELES • CHICAGO • BOSTON • NEW YORK • ATLANTA



GREAT AMERICAN GROUP

# Client Reference List

Alvarez and Marsal
Mr. Bill Kestorous
100 Pine Street, Suite 2200
San Francisco, CA 94111
415-490-2309

Merill Lynch Business Financial Services
Mr. Scott Kennedy
222 North LaSalle Street, 18th Floor
Chicago, IL 60601
312-499-3813

The Boeing Company
Mr. Craig Pitts
20651 84th Avenue
Building 7-48-4, Drive 15
Seattle, WA 98124
425-393-4043

Callaway Golf
Mr. Mike Majors
Director of Facilities & Planning
760-930-8555

Creative Ideas
Mr. Steve Balsamo
Owner
714-349-0693 (Cell Phone)

L & M Engineering
Mr. Larry Zubricky
Owner
818-269-0631 (Cell Phone)

High Ridge Partners
Mrs. Nancy Ross
140 South Dearborn, Suite 320
Chicago, IL 60603
312-456-5636

Webvan Group, Inc.
Mr. David Rock
1735 East Bayshore, Suite 5A
Redwood City, CA 94063
650-980-3210

Inverness Group, LLC
Mr. John Davidson
Chief Liquidation Officer
503-922-1220 (Office)

BAE Systems/Platform Solutions Sector
Mr. Jim Jorgensen
Manager- Manufacturing Engineering
909-673-7351
909-239-8221

Beacon Tool
Mr. Aurel Humaniu
Owner
562-693-7212 (Office)

Perfect Production
Mr. Dave Gould
Owner
760-497-6864 (Cell Phone)

Vedder Price
Mr. Michael Eidelman
222 North LaSalle Street
Chicago, IL 60601

Rally Capital Services, LLC
Mr. Howard Samuels
350 North LaSalle St., Suite 1100
Chicago, IL 60610
312-645-1975

Callaway Golf
Mr. Phil Harris
Facilities Manager
760-931-1771

Lockheed Martin Properties, Inc.
Mr. Dave Coger
Asset Management Organization
330-923-1881

Butts Manufacturing
Mr. Stacy Picascia
President
949-422-4490 (Cell Phone)

Morad Industries
Mrs. Jacqueline Burch
Owner
573-321-0178 (Cell Phone)

CORPORATE HEADQUARTERS
6330 Variel Avenue
Woodland Hills, CA 91367
(818) 884-3737 • Fax (818) 884-3561

LOS ANGELES • CHICAGO • BOSTON • NEW YORK • ATLANTA

Sonnet Tool
Dr. Merle Hilliard
Owner
310-219-7790 (Office)

Financial Resource Associates, Inc.
Mr. Leonard Eppel
10901 Reed Hartman Highway
Suite 323
Cincinnati, OH 45242
513-793-8688

Parker House Furniture
Mr. Victor Zonni
Operations Director
505 W. Foothill Blvd.
Azusa, CA
626-926-4279

Image Mold
Jewel Curtis
9534 Meadow Street
Rancho Cucamonga, CA 91730
909-987-9865 Home

Aluminum Skylight & Specialty Corp.
Floyd D'Angelo
President
8607 South Dice Road
Santa Fe Springs, CA
562-789-9274 Office
714-337-7455 Home

Leslie Jensen
Norjen, Inc.
2361 Eastman Ave.
Oxnard, CA
818-645-1951

Mitsubishi
Mr. Douglas Goforth
2590 Lakewind Way
Duluth, GA 30096
770-221-8260

MIDAS, Inc.
Mr. Bill Guzik
1300 Arlington Heights Road
Itasca, IL 60143

International Forest Products
Mr. & Mrs. Phil Butterfield
13945 South Ramona Ave.
Chino, CA
909-627-7301 Office
949-675-7482 Home

MRM & Associates, LLC
Mr. Michael Rubin
4 Revere Court
East Brunswick, NJ 08816
732-254-9985

Alvarez and Marsal
Mr. Daniel Ehrmann
101 East 52nd Street, Suite 6
New York, NY 10022
212-759-4433

